Below is an Opinion of the Court.

_____
RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| In re: | ) | Bankruptcy Case No. |
|---|---|---|
| | ) | 12-34978-rld11 (Lead Case) |
| MARITIME SERVICES CORP., | ) | |
| MARITIME'S MARINE CENTERS, LLC, | ) | 12-35135-rld11 and 12-35136-rld11 |
| and MML, USA, LLC, | ) | (Jointly Administered under |
| | ) | Case No. 12-34978-rld11) |
| | ) | |
| Debtors. | ) | MEMORANDUM OPINION |

On December 5, 2012, I held a hearing ("Hearing") on 1) the status of the debtors' ("Debtors") administratively consolidated chapter 11 cases in light of the Joint Motion to Dismiss (Docket No. 227) ("Motion to Dismiss") filed by the Debtors; and 2) four "interim" applications for professional compensation ("Fee Requests") filed by counsel for the Debtors, Field Jerger, LLP ("Field Jerger"). After discussion, with all appearing parties recognizing that all assets of the Debtors, with the exception of a couple of accounts receivable, had been liquidated, and no objections to the Motion to Dismiss having been received, I advised that a Notice of Proposed Dismissal of Case ("Notice") on 21 days' notice would be issued by the court so that the

Page 1 - MEMORANDUM OPINION

cases would be dismissed by December 28, 2012. The Notice (Docket No. 245) was issued on December 5, 2012.

The questions presented by the Fee Requests were somewhat more difficult to resolve. The first interim application ("First Application"), filed in the consolidated case but designated as for debtor Maritime Services Corp. (Docket No. 212), requested interim compensation of $94,266.25 fees and reimbursement of $2,733.40 expenses. The second interim application ("Second Application"), again filed in the consolidated case but designated as for debtor Maritime Services Corp. (Docket No. 233), requested interim compensation of $64,424.50 fees and reimbursement of $2,720.24 expenses. The third application ("MML Application"), filed in the consolidated case but designated as the amended "first and final interim application" for debtor MML, USA, LLC (Docket No. 238), requested compensation of $14,380.50 fees and reimbursement of $308.71 expenses. The fourth application ("Maritime's Marine Centers Application"), filed in the consolidated case but designated as the "first and final interim application" for debtor Maritime's Marine Centers, LLC (Docket No. 239), requested compensation of $24,365.00 and reimbursement of $401.96 expenses.

Unfortunately in these consolidated cases, nowhere in the Fee Requests did Field Jerger provide totals of the fees and expenses requested, and there were some inconsistencies in the math of the Fee Requests. Accordingly, I put together my own totals and calculated actual fees to date aggregating to $177,789.75 and aggregate actual expenses of $5,463.10. I calculated projected fees of an additional $19,646.00.

Page 2 - MEMORANDUM OPINION

No objections were filed to any of the Fee Requests. However, at the Hearing, I stated that in light of perceived deficiencies in Debtors' counsel's performance in the consolidated cases, I was considering a limited percentage reduction in the award of fees as allowed by Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008). Following discussion, I approved the First Application in its entirety and authorized Debtors' counsel to submit a conforming order. I also allowed Debtors' counsel ten days to submit a letter confirming whether he agreed with my calculations of total actual fees and expense reimbursements requested and total projected fees and commenting on the potential application of Moreno v. City of Sacramento. Field Jerger submitted such a letter ("Letter") on December 14, 2012 (Docket No. 250). At that point, I took the matter of the total award of fees and reimbursement of expenses to Field Jerger under advisement.

This Memorandum Opinion sets forth the court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a), applicable with respect to this contested matter under Federal Rules of Bankruptcy Procedure 7052 and 9014.[1]

I. How this case played out

This case was initiated by a chapter 11 bankruptcy petition filed by Maritime Services Corp. on June 26, 2012 (Docket No. 1), quickly followed by petitions in behalf of its affiliates Maritime's Marine Centers, LLC and MML, USA, LLC. The three chapter 11 cases were

---

[1] Hereafter, unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

Page 3 - MEMORANDUM OPINION

administratively consolidated by an Order for Joint Administration entered on July 17, 2012 (Docket No. 53). No creditors committee ever was appointed in the consolidated case.

From the outset, reorganizing the Debtors in chapter 11 was not recognized as a viable option. The more realistic scenarios involved either a sale of all assets to a buyer interested in continuing the Debtors' businesses under a less oppressive debt load or proceeding with an orderly liquidation of the Debtors' assets. Since no "white knight" or "stalking horse" bidder for the entire businesses ever materialized, the assets were sold in a series of § 363 sales, and Field Jerger proceeded to pursue and collect accounts receivable. The liquidation of assets has been relatively successful. At the end of the line, the major secured creditor, Associated Management Consultants, Inc., d/b/a AMCI Finance ("AMCI"), is being paid close to in full, based on an agreed total, with the principal of the Debtors, Mr. George Selfridge ("Mr. Selfridge"), and his wife being released from personal guarantees. However, the balance of funds received from liquidation of the Debtors' assets will pay no more than a portion of the administrative expenses of the Debtors' consolidated cases. Mr. Selfridge has assumed the obligation personally to pay a material portion of the administrative expenses, and while the bankruptcy case was pending, Mr. Selfridge personally paid the following prepetition payroll tax withholding obligations of the Debtors: a) IRS-$112,167; b) ODR-$13,146; and c) Wisconsin Dept. of Revenue-$700. General unsecured creditors will receive no distribution.

///

Page 4 - MEMORANDUM OPINION

## II. Concerns about the Fee Requests

From the beginning, there have been a number of problems, both procedurally and substantively, in Field Jerger's handling of the Debtors' cases. The following examples are illustrative, but not comprehensive:

1) Due to errors in the initial filings, the Debtors' expedited motions and related notices with respect to interim cash collateral use and payment of prepetition wages needed to be refiled. Compare Docket Nos. 7 and 8 with Docket Nos. 14-17.

2) Approximately 44 entries out of the 251 entry docket in this case are changes of addresses for interested parties, presumably corrected from the original mailing matrix and filed schedules.

3) The order authorizing payment of prepetition wages had to be amended to correct the case number in the caption. Compare Docket No. 45 with Docket No. 47.

4) The change of address for Walker Bay Boats was filed with the wrong case number for the consolidated case. See Docket No. 65.

5) An Order to Show Cause re: Dismissal, Conversion or Other Relief had to be scheduled for hearing because the initial Rule 2015 Financial Report was filed late. See Docket Nos. 68 and 99.

6) The August Rule 2015 Financial Report for Maritime's Marine Centers, LLC was filed with the wrong case number for the consolidated case. See Docket No. 166.

7) As noted above, the Fee Requests nowhere included totals for the actual and projected fees and expenses in the consolidated case.

///

None of the errors/mishaps listed above ultimately made any difference to the overall disposition of the Debtors' bankruptcy case. Viewed in isolation, they represent relatively minor problems that could occur (and have occurred) in any case. By all accounts, the liquidation of the Debtors' assets has been both rapid and relatively successful. Some of the referenced problems may have been the results of rushed filings in light of the Debtors' dire situations prepetition, and after the filings, some may have resulted from pressure from AMCI to get sales concluded quickly. However, the recurring problems that have been noted reflect a worrisome lack of attention to detail that I take into account in my evaluation of fee requests because such problems generally result in increased administrative costs.

### III. Application of Moreno v. City of Sacramento

In Moreno, the Ninth Circuit took a District Court to task for reducing the award of fees to the prevailing attorneys in a civil rights case by about 40% of the amount requested without specifically articulating its reasoning for the substantial reduction. In its analysis, the Ninth Circuit recognized that the primary responsibility for reviewing fee requests rests with the trial court, but when an award of reduced fees is made, it must be explained. "The explanation need not be elaborate, but it must be comprehensible." Moreno v. City of Sacramento, 534 F.3d at 1111. Nevertheless, small percentage fee reductions may be made based on a limited review and without a detailed explanation.

> Where the difference between the lawyer's request and the court's award is relatively small, a somewhat cursory explanation will suffice. . . . [T]he district

Page 6 - MEMORANDUM OPINION

>     court can impose a small reduction, no greater than 10
>     percent – a "haircut" – <u>based on its exercise of
>     discretion and without a more specific explanation</u>.

<u>Id.</u> at 1111-1112 (emphasis added). At the Hearing, I indicated that I was considering a <u>Moreno</u> reduction to the Fee Requests.

Section 330(a)(1) authorizes awards of reasonable attorneys fees for "actual, necessary services" performed for the estate and reimbursement for "actual, necessary expenses." Section 330(a)(2) allows me, on my own motion to "award compensation that is less than the amount of compensation requested." Section 330(a)(3) lists a set of nonexclusive factors that I am to consider in determining reasonable compensation for professionals, including whether subject services "were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case" in chapter 11.

In the Letter, Field Jerger reminds me that they are a small firm that produced positive results in a complicated set of affiliated cases over a short time frame. They also point out that AMCI's counsel stated at the Hearing that he thought that the time spent in Field Jerger's representation of the Debtors was reasonable, that its representation of the Debtors was efficient and that the Fee Requests represented total bills that were less than might have been billed for the same services by some other local firms. AMCI's counsel also stated at the Hearing that the 10% standard stated in <u>Moreno</u> was too stiff of a "haircut" to be imposed in this case. The United States Trustee did not take a position on the Fee Requests at the Hearing.

On the other hand, in the Letter, Field Jerger recognizes that,
///

Page 7 - MEMORANDUM OPINION

> [i]n the process of our representation, we did
> encounter challenges with the court clerk's office.
> We also did obtain negative feedback from chambers
> over some court submissions.

As the nonexclusive list of problems in Section II above indicates, the filings by Field Jerger had issues more often than I typically experience in chapter 11 cases.

### IV. Fee and Expense Totals and Allowance

In the Letter, Field Jerger's total of actual fees in the Debtors' consolidated case is slightly less than my calculation at $176,816.25. Its calculation of expenses at $5,963.10 corresponds with my calculation of $5,463.10, in that Field Jerger's total includes $500 in anticipated expenses, as reflected on Exhibit C to the Second Application. Finally, Field Jerger estimates further fees totaling $19,885 before it concludes its work for the Debtors.

Since the Debtors' consolidated case will be dismissed shortly and before year-end, in my view, Field Jerger's anticipated fees and expenses are a matter to be resolved between Field Jerger and Mr. Selfridge, and I will neither comment nor enter any order with respect to any fees or expenses projected for the future. I will allow 100% of the actual expenses requested in the amount of $5,463.10. As to actual fees, I have taken the comments and arguments of Field Jerger and AMCI's counsel at the Hearing and in the Letter to heart, but I further conclude that a small percentage reduction in the Fee Requests is appropriate in light of the errors in filings in this case, as listed and discussed above. Accordingly, I will approve actual fees with a 5% reduction from the amount stated by Field Jerger in the Letter in the total amount of

$167,975.44.  The total of actual fees and expense reimbursements that I am approving for Field Jerger in this case is $173,438.54.  I will prepare and enter an order consistent with this Memorandum Opinion.

###

cc: Maritime Services Corp.
    Joseph A. Field, Esq.
    U.S. Trustee
    David A. Foraker, Esq.

Page 9 - MEMORANDUM OPINION